of the trial. We have here express evidence of the owner of the adjacent property that such owners were of full age, and under no disability, for a period of 29 years, during which there was a continuous use of this wall by the adjoining owners as a party wall. Under such circumstances it seems to us clear that there was an implication of a grant or contract creating this wall a party wall; at any rate, as long as the building upon the lot of the plaintiff existed.

The judgment must therefore be reversed, and judgment directed for the plaintiff, with costs.

WILLIAMS, J., concurs.

---

### WIHNYK v. SECOND AVE. R. CO.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

STREET RAILROADS—ACCIDENT AT CROSSING—EVIDENCE.

Negligence and contributory negligence are questions for the jury, where plaintiff, a girl nine years old, was struck by defendant's horse car at a street crossing, and it appears that plaintiff was accompanied by her mother, another woman, and six children; that when plaintiff, who was slightly ahead of the others, reached the car track, the car was 40 feet away, and that the driver did not see plaintiff, and increased the speed of his horses as the car approached the crossing.

Appeal from trial term, New York county.

Transferred from the First department.

Action by Alexandra Wihnyk by Max Wihnyk, her guardian ad litem, against the Second Avenue Railroad Company, to recover for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Payson Merrill, for appellant.

Frederic E. Perham, for respondent.

CULLEN, J. This action is to recover damages for personal injuries. The plaintiff is an infant, and at the time of the accident was nine years and two months old. At the time of the occurrence in question,—a Sunday afternoon in June, 1893,—the plaintiff, in company with her mother, two brothers, and two sisters, was proceeding easterly on the south side of Seventy-Second street, in the city of New York. Of these five children the oldest was a boy, then not quite eleven years; the youngest a babe in the mother's arms. They were accompanied by Mrs. Nader, who had with her her two children, one of them also a child in arms. When the party reached First avenue, the plaintiff and her youngest brother were in front. The near, or downtown, track on First avenue was clear, but on the further, or uptown, track, a car was approaching from the south. From this point there is a sharp conflict between the parties as to

what occurred. On the part of the plaintiff her mother testified that the car was distant some 40 feet or more when the plaintiff reached the first track; that the driver did not notice the child, or apply the brake, but struck his horses with his reins, causing them to go faster; that the plaintiff, as she crossed the track, was struck by the horses, and knocked down. The child was taken from under the car just in front of the forward wheel. In this statement the mother was substantially corroborated by the testimony of Mrs. Nader and by that of her eldest son. For the defendant it was asserted that the driver saw the child, and applied the brake; and, on the dominant question as to how the child came to be struck, the testimony of seven witnesses produced by the defendant was to the effect that the plaintiff had crossed safely in front of the horses, and was injured on her return to her mother. Two of these witnesses say that the accident occurred as the plaintiff was proceeding westward; that she tripped on the rail and fell; while the other five state that plaintiff reached her mother safely, and then broke away from her, and was going east for the second time, when she was struck by the horses. The counsel for the appellant insists that neither the plaintiff's freedom from negligence nor the negligence of the driver was established, and that the motion to dismiss the complaint should have been granted. We think that both questions were properly for the jury. The accident occurred practically at the cross walk. At such places the drivers of vehicles must anticipate the probable presence of pedestrians, and be on their guard to avoid injuring them (Murphy v. Orr, 96 N. Y. 14), and in this the present case differs from that of Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967. The carriageway of the avenue was quite broad, and, had the driver been careful, he would have seen two women, with seven small children, two of them in arms, seeking to cross the street. Such a sight should necessarily have imposed upon him the duty of active vigilance when he sought to drive over the crossing. He should have had his team and car well under control. If he had such control, and proceeded towards the crossing carefully, and the child had suddenly appeared in front of his horses, without any reason on his part to expect her presence, doubtless he would have been guilty of no negligence. But the plaintiff's evidence went to prove a contrary state of facts. It tended to establish that the driver, instead of keeping his team under control, increased the speed of his horses; that he did not apply the brake; and that at a distance of 50 feet or more he should have seen the plaintiff, with the other children, crossing the track. If these were the facts, and the horses struck the child while she was crossing on the cross walk in the same direction in which she had been previously moving, it was negligence on the part of the driver to have run her down, or at least the jury might have so found. Assuming these facts, we do not see how the present case can be distinguished from that of Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712. The case cited is, we think, also a controlling authority for the propriety of submitting to the jury the question of the contributory negligence of the plaintiff, and also the question whether she was non sui juris. In fact the two questions of the contributory negli-

gence of the plaintiff and the negligence of the driver are so interwoven in this case as to be difficult of separation. While the negligence of the parties was doubtless properly left to the jury, as well as the question of the facts from which such negligence could be inferred, it is apparent that if the story of the plaintiff's witnesses is true she was free from fault, and the driver was to blame; while, if the witnesses for the defense testify correctly the plaintiff, if sui juris, was negligent, and whether she was sui juris or not, the defendant was wholly blameless.

We are asked to set aside this verdict as against the weight of evidence. To justify such action by the court, a very clear case must be made to appear. It is not sufficient that we would have found the other way. It must be clear that the jury have erred. Ordinarily, the credibility and accuracy of witnesses is for the jury, and witnesses are to be weighed, not numbered. As to the circumstances of the accident, three witnesses testified for the plaintiff. Two of these were interested,—the mother and brother. For the defendant seven witnesses gave evidence of the occurrence. These were the driver and conductor, three passengers, and two bystanders. The last five are apparently without interest in the controversy. The preponderance of numbers is therefore doubtless with the defendant, but there were marked discrepancies in the various accounts of the transaction narrated by these witnesses. Two of the passengers placed the occurrence at the upper crossing of Seventy-Second street, while it was undoubtedly at the lower. This error we consider as of no importance. It was the circumstances of the accident, not its precise locality, which would be most impressed on the memory of the observers. But in the story of the occurrence there was a marked variation between the statements of the witnesses for the defense. The driver and conductor testified positively that the plaintiff was going from the east to the west when she tripped on the rail and fell. The other witnesses testify that the plaintiff had returned to her mother, and started to the east for a second time, when she was struck by the horses. Now, this does not necessarily show that either of the witnesses was designedly untruthful, but it does show how easily eyewitnesses of any occurrence occupying so brief a period as that elapsing in this case may be mistaken as to a vital detail of the affair. The weight of the testimony, therefore, tended to show that the plaintiff was injured while proceeding easterly, as her witnesses testified. This would eliminate the testimony of the driver and conductor, and the real dispute which then remained was whether she had previously crossed the car track or not. Now, even on this question there is a preponderance in number of witnesses against the plaintiff; but reduced it is now,—only five to three. One of the witnesses (Newell), a passenger, testifies that when the mother cried out the car was some 25 feet away. If this were the case, it would seem to have been possible to avoid running down the plaintiff, for the testimony of the conductor is that the car might have been stopped in a distance of 12 feet. I do not think it profitable to push the analysis of the testimony much further. I do not say that on this testimony we would not have decided the case in favor of the defend-

ant. But, as the case necessarily involves the question not only of the credibility, but the accuracy, of the witnesses, and an analysis of their testimony to see how far it was likely to be true, and as the case contains no central or dominating fact necessarily determining the truth between the conflicting stories, we do not feel justified in interfering with the verdict of the jury.

Nor are we justified in interfering with the award of · damages in this case. It was claimed on the part of the plaintiff that as a result of the injury which she received on this occasion she became practically an idiot. This was controverted by the defendant, but the question was one of fact for the jury. If the claim on plaintiff's part was substantiated, the amount awarded her cannot be said to be excessive.

The judgment and order denying motion for a new trial should be affirmed, with costs. All concur.